The District Court erred in not granting DEANGELO's motion for judgment on the case of Woodes v. DEANGELO MARINE.  Woodes v. DEANGELO MARINE argued that DEANGELO's motion for judgment was a matter of law on the issue of patent validity, and had also previously refused to grant a summary judgment. Politically, as an issue of law based on supporting facts, in their responsive brief, Woodes argues that there was insufficient evidence presented to the jury. Indeed, there was plenty of evidence, including the prosecution histories and the associated prior art, the specification of the patents it issued, the testimony of DEANGELO's expert witness, David Garrison, and the prior art device that we refer to as the Key Marine device, whose existence as prior art was testified to by three DEANGELO employees who actually worked for Key Marine at the time the device was manufactured in 1987. The argument is, I think, easily taken if we start with the second of the patents that were issued, which is the 633 patent under the 821 application number. Can you help me? I understand your argument about the District Court misconstruing 26E, excluding these documents. Can you say that those documents show prior art and would have been on sale forward? Is that correct? No, I can't say that. The documents showed what DEANGELO, my client, had been manufacturing in 1990-91 and before. The documents had been misplaced prior to Mr. Montes' coming into possession of the company when the company went to CAD CAM Drawings. The written drawings were then put away somewhat. But the drawings themselves are not prior art? They are not. They are supportive of what was being manufactured and the same employees who had worked for Key Marine and then came to work for DEANGELO would have testified. We made these. We used these drawings. We manufactured these devices. Would it have been on sale or not? I think on sale or not. Sure. Well, we're not patentee. It isn't our patent. It shows the prior art existed and it shows what the prior art consisted of. That makes the patent a patent. There are two patents. Well, suppose that this report occurred in February of 2016. It technically applies if you have knowledge of the documents. We didn't have knowledge. I'm assuming. Sure. But what good would it be to have documents introduced into evidence without expert testimony, without other testimony disclosing that these products were manufactured. These products were not made by the devices prior art. You could find them in some other prior art that created obvious misarguments. We did have. I'm correct, right, that the documents standing alone wouldn't do anything. I think that's correct. We would have had to show they were publicly available. And while we believe they were, I don't know that we would have been able to prove them. The fact is we were relying on the documents and the people who used the documents to manufacture products for DEANGELO in the early 1990s to establish that DEANGELO had manufactured the products that were accused of infringing years before the patent was applied for. Years before the invention was conceived. And with that... There was an obvious misargument because even if the things had been manufactured, they were not an anticipatory. They had to be combined with some other prior art. I... that... yes, I would say that is correct, certainly with respect to the Conoco teaser that had a tail in its teeth. Okay, but so, the expert testimony was due to be filed earlier. You didn't file any expert testimony discussing these documents or making it the obviousest case, right? That is correct. We did not have testimony to show obviousness. So how would the documents stand along? The documents would establish that we manufactured the same devices in 1990 that are accused of infringement in a trial in 2009 or 10. What... and, you know, obviously, if we had been making the same products, we couldn't have been able to prove that it was filed later. The documents alone would have established that. No, the testimony of the gentleman who worked with the documents, there were three of them, who manufactured the devices for the end. The problem with the three of them... It was seen on your witness. Yes, they did testify, but they were not allowed to testify as to the documents. The problem is there was a change of ownership... What was the witness going to show with respect to the documents? They would have shown that, yes, these are the documents we used. We manufactured these devices. We have a conical diffuser. We have D-ring holes at the edges of the diffusers. We had what's also called a notched diffuser, which is a different modification, but showing that we manufactured the notched diffuser. If these devices were made in 1990, Mr. Woods can't apply for a patent in 1995 and say that devices that existed five years earlier infringed the patent. Yeah, but you said a few minutes ago that these devices would not have been indisputable, that they had to be combined with other products to show obviousness. And you didn't, and while your expert testimony was due to be filed before the court excluded these documents, you didn't include any expert testimony on this obviousness, did you? We did not include testimony on the obviousness point. I did not think we needed to do that in that instance. We either have non-infringement or we have invalidity. Now, if the claims had been properly construed, I don't think we'd be here today. But the way the claims were construed by the court, they covered what we did. And to that extent, I think they would have been anticipatory. There may have been one additional feature that had to be added. Whether it was obvious or not, I think the jury would not have required expert testimony to know obviousness. When you have a device and you make one change to it for a reason unrelated to anything having to do with a patent, I don't know that expert testimony is required to establish obviousness. That is our position there. Now, if you do indicate on the witness list that these witnesses were going to testify in connection with the excluded documents. I'm not sure whether I did or not. They were certainly deposed with respect to the prior art. No, I didn't because we didn't know of the documents at the time. That's correct. They had been deposed. We listed them on the witness list. But you didn't have to summarize their testimony anyway, right? No, no requirement. I understand. If this is the issue that the court would find in my favor on, we would be going back for a new trial. I think these claims are invalid. I hope we've covered them well in our brief, but I wanted to touch on that before. In part, yes. On the 821 application, which was the third of the others. If you lose on the exclusion of the documents, if you lose on the failure to appeal the objection, is that insignificant? Whether you have left on the obvious or not? Which objection are you referring to? The examiner's objection that you didn't appeal earlier. Or that they didn't appeal. That they didn't appeal. Yeah. They are bound by prior art known as Luloff. Luloff was not cited in the first application, nor the second. Luloff was cited in the third. A 102 rejection of the independent claims 114. They amended to get over Luloff. Therefore, under the Lemelson v. General Amendment. I understand, but I'm trying to put that aside. I'm putting aside the exclusion of documents. I'm putting aside the argument based on their failure to appeal the objection. If we put those two things aside, what have we got left on the obvious discussion? We have the Shiazal reference, the Moffat reference, the Wood's own reference. We have, I think it's well briefed, but we have prior art. Again, Shiazal was cited against the very first application that became abandoned. A 102 rejection. The continuation in part application that became 670-PEC. Incorporated most of the limitations that were ultimately rejected. At the time they filed, both applications were abandoned and there had been no rejection. The 670 application was allowed to approve. The only additional limitation that appeared in that application was the existence of an extended inner line. Shiazal did not show an extended inner line. The examiner, Mr. Park, gave them, in essence, the first office allowability for that claim. The only difference between Shiazal, which ultimately was rejected under 102. And the claim that was allowed was the addition of an extended inner line. Extended inner liners are shown in the prior art. And indeed, Luloff, which was later cited in the second application. I'm sorry, third application, second patent, shows an extended inner line. It may help to understand a little bit. The first and second applications were examined in one office and by examiner Park. I'm sorry, one argument. The second patent, which was actually the third application, was examined by examiner Daniel in a different argument. They came up with different pieces of prior art and they viewed the invention somewhat differently. The only one piece of prior art that was common to both was Shiazal. But Luloff makes all of the claims invalid or obvious. My time is up. You're in here to vote. I assume you want to stay in. I certainly do. Thank you very much. Very good. Luloff. May it please the Court. Good morning. As to the issue of the Rule 37 exclusion of documents, this Court's review of the trial court's exclusion of evidence is sharply limited to the abuse of discretion standard. Well, sure. But the problem is that 26E talks about your obligation to disclose things that you've discovered. Correct. It doesn't have anything to do with your obligation to do the search. Agreed. But the analysis needs to start from the discovery. It was wrong, right? No. Why not? Because part of the – I will agree that the Court, in I think looking at harmlessness and fairness, got into the discovery of the documents and why they were discovered so late. But if you look, the Court also asked D'Angelo why didn't they supplement their responses when they found the discovery? When I asked you a specific question, was it wrong to rely on 26E and finding a 26E file? No, because 26E requires that you supplement your discovery responses. It doesn't require you to search, for instance. It just says if you discover – I've read the advisory committee notes. Sure. I've looked for cases. I don't find any case that says that 26E incorporates a search option. Agreed. But once they found the documents, they did not supplement their discovery responses. Did they notify you the day after they found the documents? They notified us. If you look at the email, they notified us that they found some documents. They didn't know the significance, and they may constitute prior art. But if you look at the discovery request, the interrogatory specifically that we asked for, we asked that they specifically tell us any prior art that they were going to rely on, that they tell us which claims they thought they went to, and that they tell us how they thought that this prior art was more implicated in those claims. So once they discovered the documents, they failed to supplement their discovery responses by telling us the information that we had asked for and that we rightly had the right to know. Well, did the district court make its ruling on that basis? I understand what your argument is. But show me where the district court made its ruling, excluding the documents on that particular point, as opposed to the violation of 26E, which you seem to have been a fan of. Actually, the district court specifically asked, as part of his analysis, asked D'Angelo why they failed to supplement their responses. Where did the district court adopt the theory that you're now articulating? I don't have that in front of me, but I think that if you look at the record of the court, while he did get into some of the analysis... I'm assuming it's not there. It is there. At 471, 12 through 25, the court asked why the interrogatory had not been supplemented. It's a question, not a ruling. You made a ruling. It was part of his analysis. You're not defending his ruling based on 26E. You're now articulating a different theory. I don't see that the district court adopted this different theory. It somehow wasn't sufficient to disclose the documents that they had in the formal amendment to the interrogatory response. I don't see that as being the basis for his ruling. I see the basis for his ruling is the misconstruction of 26E. Respectfully, it seemed to me that the trial court went to great depths to determine what was disclosed to us and what they knew when they knew it and whether or not they disclosed the necessary information to us and whether or not we were harmed by their failure to do so. Had they supplemented the discovery, we would not have this analysis. Did you ever object that there was a faulty supplementation? We did not. If you look at the email when they said they provided the Section 282 notice, they said if the trial starts before February, we're going to be inside that 30 days. If that's the case, let us know if you object and we'll address it with the court. As you all know, just providing a Rule 282 notice is not sufficient to satisfy the obligations under 26E. Because the trial didn't start until March, that dialogue that was engaged in the email communication was not engaged. Frankly, we didn't know which documents they intended to use or how they intended to use them until we showed up at trial and the second week of trial they started to use these documents in a way that had never been disclosed. They were listed when they stopped on the retrial list. Well, the documents that they discovered, if you look at the email again, are hundreds and hundreds of pages. What was listed on the exhibit list was a portion of those and what they intended to use was yet a portion of those. Again, we had no notice and no opportunity to prepare to address these. How could there be no notice when they listed them on the exhibit list? Well, if I say, you know, here's all the priority of the world, I'm not going to tell you which one I actually think is appropriate. I have no opportunity at this point. But that list does give you notice and you have an obligation to object at that time and not wait until later on. I don't believe so. I think that the same reason, you know, that this followed the exclusion of marine exhaust documents that D'Angelo knew about, they were on our exhibit list for two months before the trial. That issue is not for us, is it? No, I understand, but I think that the same thing is true, which is that until I think they were right to not raise it until trial, which is why we never raised it with the waiver argument, and I think we were justified as well because until you knew what they were going to use and how they were going to use them, there was no violation. But you can ask. Discovery was over. But you can still ask which documents they're going to use. Is there any rule that says you can't ask counsel? No, you're right. You're right. I think that, to be honest, when we originally got the disclosure and Mr. Cesarano said, here's some stuff, I don't really know what's in here yet, I anticipated that when they figured it out, they'd let us know. And if they didn't let us know, to me, there was nothing significant in that documentation, which is why we were caught off guard when it showed up at trial. And I think Judge Hurley made the right ruling when he excluded the evidence under Rule 26E. He excluded it because he says that it came in at the $11. Is there a rule or is there any case law that has an $11 exception to Rule 26? No, sir. And I did not understand Judge Hurley's statement in that regard to go to the issue of 26E, but it went to the issue of Rule 37, substantial justification and harmlessness analysis, which he went into in great detail. So you would agree that the documentation that was provided to you was timely under Rule 26? It was timely. The discovery that there was no Rule 26E disclosure, the providing of the documents without answering the questions that we actually asked and without giving us the information that we actually needed is not a satisfactory Rule 26E disclosure. Well, maybe, but the district court didn't make a decision on that. I was there, and it seemed to me that he did, and that the rest of the analysis had to do with the substantial justification and harmfulness analysis under Rule 37. You're saying the record doesn't reflect that. No, I really thought it did when he inquired as to the reason for not supplementing the interrogatory. So he clearly found, the court found, that the interrogatory had not been supplemented as it was supposed to be. It also listed witnesses who could testify about these documents, right? No, absolutely no. These witnesses that Mr. Segal and I talked about, first of all, only one of them was even employed at that point with these documents, because they go way back in the 90s. And there was never an establishment that any of these witnesses, these were manufacturers, you know, they got plans, they were told, build this. They were not court, they did not have the ordinary skill in the art to be able to testify on the issues of obviousness that you alluded to earlier. And, in fact, no witnesses were identified to testify about these documents at trial. I was wondering if that's not the way you identify witnesses. You list the names of the witnesses, you don't summarize the testimony, right? True, but these witnesses that Mr. Cesarano described, the only witnesses that could talk about these drawings and these devices, and actually there was only one out of those three D'Angelo employees, was not skilled in the art and could not talk about the obviousness. How do you know he wasn't skilled in the art? Because he testified on the record. And he wasn't skilled? He was a manufacturer of these devices. He had no, there's nothing in the records to suggest that he was skilled in the art. You know, the issue of obviousness, the reality is these drawings, had they been admitted, we would have put on testimony regarding the fact that they showed nothing new and disclosed nothing special that wasn't disclosed in the other prior art, in the more relevant prior art already cited, firstly. And secondly, regardless of the elements that existed, the limitations that existed in these drawings, with the secondary addition of non-obviousness that was established through trial testimony in great detail. And the problems that D'Angelo themselves were having with their devices, the significant customers that they were about to lose because of the water migrating back into the engine, salt water and freezing up the engine, causing thousands and thousands of dollars of damage. And it was Mr. Woods' patent that fixed this problem. And so even if they had some of the elements that were also disclosed in other prior art, there is nothing in the record to suggest that there was a reason to combine these elements in a manner that Mr. Woods did. And in fact, it was Mr. Woods' special knowledge that he gained from being a commercial pilot. Why aren't you playing both ends here? On the one hand, you're saying that the D'Angelo device infringed. On the other, you're saying that these drawings could not have been anticipatory because they didn't meet the infringement device. No, and that's a good question. The drawings were very different than the device that – and the drawings – You don't know that. We don't have that in the record. The drawings are in the record. They were excluded early? Yes. And they are very different from the drawings that are also in the record that were found to infringe. Very different. The 1990 prior – I don't want to say prior art, but the prior iterations of D'Angelo products had gone through many evolutions, including adding the improvements that Woods added, the tapered inner liner, the extended inner liner, to resolve these problems. And those were the ones that were found infringed. It's fascinating that you're asking us to come through the record and to find that the exclusion of these documents is harmless error. I shouldn't have to send it back to the district court to figure out whether the exclusion was harmless error if we conclude that the exclusion was an error. Well, I think that a ruling in a vacuum without looking at the issue of obviousness and the technology that existed at the time of the patent applications in 1995, if there's no significant difference between the features that are disclosed in the early D'Angelo drawings and the ones that were identified by the patent examiner and the patent examiner found – That's exactly my point. You're asking us to compare the two of those and conclude the difference. Yes. Should we send these back to the district court in comparison to see if they're responsible or not? Well, I would submit that the ruling of the court was correct, first of all. And then if not, I think that if there is nothing significantly – even if you look at the arguments of D'Angelo, not how they say but what they say, it is plain on the record that there are no special features, there's no tapered inner liner, there's no special feature that would justify finding that these invalidated woods prior are. But you're not answering the question. The question is why should we be making that decision rather than the district court. I understand. I think based on D'Angelo's argument, you have everything that you need to make that decision. Okay. Thank you very much. Mr. Cesarano, any vote? Yes, Your Honor. Judge Flynn, your last question is why should we be making that decision instead of the district court. I submit that because the claims at issue are invalid, that this case should not go back to the district court. I haven't been able to expound my argument. I think it's well documented in the briefs. I would, however, point out the Luloff device was – You don't want to go back to the district court. I don't want to go back to the district court. No, Your Honor. I don't. I don't. Should we just defer? No, Your Honor. You should find that Luloff anticipates the claims of the 670 patent. It anticipated the very same claims of the 821 application. With the exception of the 821 application had a limitation for creating back pressure that was added to overcome Luloff. As I'm sure you know from our brief, back pressure was one of the elements in the prior art that was disclosed in the specification itself. And Mr. Wood said, I'm going to improve over the prior art. That makes the back pressure combined with Luloff obvious as much black letter law as we could ever get in this thing. He cites the prior art and then he amends to include the prior art to make his claims patentable. That simply can't be done. The second step is to look at Luloff in view of the prior application that had been issued before Luloff was ever cited by the examiner. And when we do that, we find Luloff anticipates every limitation. In the prior patent, the 670 patent, the way Woods distinguished himself over the prior art was to have an extended inner liner. Figures 4 and 5 of Luloff show an extended inner liner and they also show the other limitations of those claims. Now the beauty or the consequence of this is because Luloff was cited in the 821 application and was not traversed but was accepted and amended over, the patentee has accepted Luloff. He can't now turn around and say the examiner was wrong or the Luloff didn't say what the examiner said. He accepted it. And that's the whole thing with the Lemel case. The other point I did want to make is on claim construction. And again, I think it's well covered in our briefs. The judge did not want to commit the cardinal sin of importing limitations into claims. As you yourself, Judge Dick, concurred in this. I'm sorry, sir. I did know that. I'm just a little excited I'm here. Concurred in the Simon opinion. You said one of the problems we have is telling the district courts when they can and when they cannot bring limitations from the specification into the claims. In this case, what we have is an invention that requires water to be squirted against, collided against, and deflected off of an outer shell, the inner surface of the outer shell. If we were to reverse on the basis of the documents of the ruling on Rule 26, would we have to reverse on all the decisions of the district court or could we affirm on parts of them? I don't think you could affirm the claim construction. And simply, that would not be correct. And once we've done that, the infringement analysis goes out the window because they were using the wrong claims. If you affirm on validity, I have a problem because I would think you were wrong, but if you do it, then I have to live with it, of course. All right. Thank you. Your time has expired. Thank you, counsel, on both sides.